IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

THOMAS DAVIS,

    Plaintiff,

vs.                           Case No. 1:08cv203-MP/WCS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

    This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D). It is recommended that the decision of the Commissioner be reversed and remanded.

**Procedural status of the case**

    Plaintiff, Thomas Davis, applied for disability insurance benefits on February 7, 2005, alleging onset of disability on September 30, 1996. His last date of insured status for disability benefits was December 31, 1999, and he must show onset of disability on or before that date. Plaintiff was 38 years old on the date of alleged onset, 41 years old

on his last insured date, has a high school education and two years of college, and has past relevant work with the postal service and the military. R. 23, 351. Plaintiff alleges disability due to back pain, knee pain, right eye blindness with orbital headaches, depression and anxiety. R. 353-356, 19. The Administrative Law Judge found that Plaintiff had the residual functional capacity to perform a wide range of simple, unskilled sedentary work. R. 20. He found that Plaintiff cannot return to postal work. R. 23. Applying the "grids,"[1] Medical-Vocational Rule 201.28, the ALJ found Plaintiff was not disabled before the expiration of his disability insurance benefits at the end of 1999.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211

---

[1] Appendix 2 to Subpart P of Part 404 – Medical-Vocational Guidelines, found at: http://www.ssa.gov/OP_Home/cfr20/404/404-ap11.htm

(11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

     A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

     The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1.    Is the individual currently engaged in substantial gainful activity?

    2.      Does the individual have any severe impairments?

    3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

    4.      Does the individual have any impairments which prevent past relevant work?

    5.      Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Legal analysis**

      Plaintiff contends that he has a non-exertional mental health impairment arising from post traumatic stress disorder, headaches, and panic attacks, and that this impairment precludes a full range of simple, unskilled sedentary work. Doc. 21, pp. 7-9. Plaintiff argues that as a consequence, the ALJ was not permitted at step 5 to refer to the Medical-Vocational rules, but was required to call a vocational expert to identify work that Plaintiff can perform.

"Exclusive reliance on the grids is not appropriate either when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." Phillips v. Barnhart, 357 F.3d 1232, 1142 (11th Cir. 2004). "Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include mental limitations, pain limitations, *and all physical limitations that are not included in the seven strength demands*." Phillips v. Barnhart, 357 F.3d at 1242, n. 11 (citations omitted, emphasis added). "When considering [a claimant's] nonexertional limitations, the ALJ need only determine whether [the claimant's] nonexertional impairments *significantly* limit her basic work skills." *Id.*, 357 F.3d at 1243 (citations omitted, emphasis added). This means "limitations that prohibit a claimant from performing 'a wide range' of work at a given work level." *Id.*

Plaintiff relies upon evidence in the record from two physicians, Dr. Roy D. Clark, Jr., M.D., and Dr. Edward G. Blankstein, M.D. Dr. Clark conducted an independent medical examination on a consultative basis on March 9, 1998, in conjunction with a worker's compensation claim, within the insured period. R. 69. Dr. Blankstein conducted two assessments, one on February 22, 2005, R. 210, and the other on January 21, 2008. R. 342. Although both were done some years after Plaintiff's insured status expired, Dr. Blankstein was a treating physician before Plaintiff's insured status expired and continued to treat Plaintiff for about five years afterwards. He also conducted two interviews on the dates of both assessments. Thus, the evidence is relevant to the disability period in question.

The Administrative Law Judge declined to give substantial weight to the assessment of Dr. Clark. R. 22. He reasoned:

> Dr. Clark is not a treating source and the evaluation was done in one visit. Further, the evaluator appears to have been selected by the claimant as the report indicates that "Thomas Davis, a 39 year old man, requested a psychiatric assessment . . . .

*Id.* He also noted that at one point Dr. Clark said that "objectively, the assessment does not indicate the presence of any mental status barriers to employment . . . ." *Id.* He said that while Dr. Clark thought that Plaintiff suffered from chronic posttraumatic stress disorder, "yet there is virtually no discussion of any traumatic event . . . ." *Id.* He noted that on the worker's compensation form, Dr. Clark never indicated that he had never had a patient relationship with Plaintiff. *Id.* Finally, he found that Dr. Clark's reference to "symptoms" as the reason that Plaintiff cannot work "is extremely vague." *Id.*

A consultative examination like the one conducted by Dr. Clark, that is, a one-time examination by a physician who is not a treating physician, need not be given deference by the Commissioner. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987); Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (a consulting physician's opinion "deserves no special weight"). The opinion of a consultative physician, however, is still a medical opinion deserving of consideration along with all of the other evidence. If the opinion of a consulting physician is consistent with other medical evidence, it is entitled to great weight. Moncrief v. Astrue, 300 Fed.Appx. 879, 881 (11th Cir. Dec 01, 2008) (not selected for publication in the Federal Reporter, No. 08-12853). To like effect is Giddings v. Astrue, 2009 WL 1813741 (2nd Cir. Jun 26, 2009) (not selected for publication in the Federal Reporter, No. 08-1108-CV):

>We recognize, of course, that Dr. Hargraves only examined Giddings once, and is not entitled to the deference of a treating physician. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) ("With respect to 'the nature and severity of [a claimant's] impairment(s),' 20 C.F.R. § 404.1527(d)(2), the SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." (internal quotation marks omitted)). We also acknowledge that generally, "in evaluating a claimant's disability, a consulting physician's opinions or report should be given little weight." *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990). At the same time, ALJ Zolezzi did not refer to any medical opinion that contradicted the medical opinion of Dr. Hargraves as to Giddings's ability to sit, stand, or walk during the work day. *And we have indicated that, when a medical opinion stands uncontradicted, "[a] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome" it.* *Burgess*, 537 F.3d at 129 (internal quotation marks omitted); *see McBrayer v. Sec. of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) (stating that "t*he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion*" and that "[w]hile an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him" (citation and internal quotation marks omitted)); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (*per curiam*) ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided" in the Commissioner's regulations.) (internal quotation marks omitted); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) ("As is the case with the opinion of a treating physician, the Commissioner must provide '*clear and convincing*' reasons for rejecting the uncontradicted opinion of an examining physician.").

Giddings v. Astrue, 2009 WL 1813741, *2 (2nd Cir. Jun 26, 2009) (not selected for publication in the Federal Reporter, No. 08-1108-CV) (emphasis added). Thus, where a consultative medical opinion is the *only* relevant medical opinion, the ALJ must provide a "compelling critique to overcome the uncontradicted medical opinion" of the consulting physician. *Id.*

Case No. 1:08cv203-MP/WCS

Dr. Clark said in his assessment of March 9, 1998, that he had available to him a number of records from the period 1993 through December 31, 1997. R. 69-70. According to Dr. Clark, Plaintiff was then receiving compensation for panic, anxiety, and "PTSD." *Id.* Dr. Clark said that he had reviewed a statement dated on September 14, 1993, that "described a number of events accepted to have contributed to Mr. Davis's stress-related condition." R. 69. Plaintiff had onset of panic disorder in January, 1993, causing him to be taken to the hospital. R. 69. Dr. Murray, the treating physician, said that Plaintiff was adjusting favorably to treatment and reduction of stress. R. 70. Dr. Murray had said that Plaintiff was "not capable of returning to his regular duties within the U.S. Post Office." *Id.* Dr. Clark noted that on July 11, 1995, S. Harvard Kaufman, M.D., a psychiatrist, recommended that Plaintiff "not attempt to work a full eight hour day under authoritative pressure." *Id.*

Plaintiff told Dr. Clark that in 1987, when he first started working for the post office, he was grabbed roughly by a supervisor and ordered to "get to work." R. 71. He apparently related other "abuse." *Id.* He said that after he was transferred to maintenance, he had a "severe panic attack in January 1993" and was taken to the hospital. *Id.* Plaintiff said he was under the care of Dr. Kaufman through 1995. *Id.*

Plaintiff told Dr. Clark that he continued to experience symptoms from his "January 1993 occupational condition." R. 71. He said he was angry, had no patience, had nightmares about the post office "dreaming about what happened," had tightness in his chest, and had to remind himself to breathe. *Id.* Dr. Clark said that Plaintiff became visibly anxious when he related this history. *Id.*

The only illness noted by Dr. Clark was the "severe panic attack requiring hospitalization in 1993."  R. 73.  Plaintiff said that his daily activities include fixing his son's lunch, getting him going to school, and picking his son up from school.  R. 74.  He did grocery shopping and housework.  *Id.*  He said he usually had a "splitting headache" by 11 a.m., and lies down for an hour.  *Id.*  He "makes sure" his son does his homework.  *Id.*  He often prepares the family dinner.  *Id.*  He can drive a motor vehicle and does so.  R. 75.

Dr. Clark found Plaintiff's speech to be responsive, coherent, and goal-directed, but he became visibly agitated when describing stressful events while working for the postal service.  R. 75.  He was oriented in time and place, and there were no indications of psychosis.  R. 76.

Dr. Clark administered several tests.  R. 76.  The results from one test, said Dr. Clark, were consistent with posttraumatic stress disorder.  *Id.*  Another test was positive for "a severe level of endogenous (panic-type) anxiety symptoms and a marked level of situational anxiety symptoms."  *Id.*  Another rest suggested severe to extreme depression.  *Id.*  Dr. Clark said that the tests results were consistent with his subjective and clinical symptoms.  *Id.*  Dr. Clark thought that psychiatric treatment was indicated.  R. 77.  Dr. Clark said that: "Objectively, the assessment does not indicate the presence of any mental status barriers to employment."  *Id.*  He then said, somewhat inconsistently:

> Overall, the evaluation indicates Mr. Davis is not, on a more-than-probably-than-not basis, capable of gainful employment.  This results from the physical conditions described above, as well as the severity of

symptoms of posttraumatic stress disorder, panic disorder, and dysthymic disorder.
R. 77. He assigned a current GAF of 50, with 55 as the highest score that year.[2] *Id.*

Dr. Clark concluded that he thought that Plaintiff "would benefit from treatment. He would respond to a combination of psychotherapy and medication management." R. 78. He said that while Plaintiff's prognosis for improvement of his physical and mental conditions was good, "[t]he treatment will not, however, likely produce improvement permitting Mr. Davis to return to work." *Id.* Dr. Clark said that Plaintiff was "not able to deal with complexity of task, pace of volume of work, supervision, and relationships with others" due to "persistence of symptoms from his panic/anxiety, mood, and Posttraumatic Stress Disorder." R. 79.

In summary, Dr. Clark's assessment of March 9, 1998, is uncontradicted in this record. Indeed, as discussed ahead, it is fully supported by the opinion of Dr. Blankstein, a treating physician. Therefore, it was incumbent upon the Administrative Law Judge to provide "clear and convincing" or "compelling" reasons to reject Dr. Clark's opinion.

---

[2] "The GAF scale reports a 'clinician's assessment of the individual's overall level of functioning.' *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 1994)." Sims v. Barnhart, 309 F.3d 424, 427 n. 5 (7th Cir. 2002). A GAF score of 41-50 indicates: "Severe symptoms ( e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting ) OR any serious impairment in social, occupational or school functioning ( e,g., no friends, unable to keep a job )." A GAF score of 51-60 indicates: "Moderate symptoms ( e.g., flat affect and circumstantial speech, occasional panic attacks ) OR moderate difficulty in social, occupational, or school functioning ( e.g., few friends, conflicts with peers or co-workers). *See* http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp.

The reasons given by the ALJ are not compelling. To begin with, there is little evidence in this record to suggest that Plaintiff "selected" Dr. Clark. Indeed, Plaintiff states that the worker's compensation carrier selected Dr. Clark and paid him, which is the more likely relationship between Plaintiff and Dr. Clark. R. 12.

Further, while Dr. Clark did not treat Plaintiff over a substantial length of time, his assessment is thoughtful, detailed, and based upon available medical records (including treatment records from Dr. Kaufman, an earlier treating physician) and the results of several psychiatric tests administered by Dr. Clark. It was error for the ALJ to completely disregard Dr. Clark's assessment, and that assessment should have been given some weight.

The Administrative Law Judge determined that Dr. Blankstein was a treating physician. R. 23. The opinion of a claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004).

The ALJ said that his determination that Plaintiff is limited to *simple* routine work is supported by the first opinion of Dr. Blankstein, in 2005. R. 23. The ALJ reasoned that since Dr. Blankstein found that Plaintiff had difficulty concentrating upon tasks and was easily frustrated, "a limitation to simple work during the relevant period is justified." *Id.*

This is an illogical conclusion. In the memorandum, Defendant points out that "simple" work is merely "unskilled" work, a vocational consideration. Doc. 24, p. 6, n. 4, citing 20 C.F.R. § 404.1568(a). That regulation states in part: "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). The fact that work is "simple" says nothing about whether a person has the residual functional capacity to do it. As the Commissioner's regulations provide: "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work *and other work*." 20 C.F.R. § 416.945(c) (emphasis added). A person who has difficulty concentrating and is easily frustrated is likely to have difficulty doing "simple" work for an 8 hour day, 40 hours a week.

Moreover, the opinion of Dr. Blankstein is far more detailed than suggesting that Plaintiff has minor trouble with concentration and frustration. On February 22, 2005, Dr. Blankstein wrote a letter to the Social Security Administration describing his treatment of Plaintiff and his diagnosis and opinion as to Plaintiff's mental impairments. R. 210. He said he had been Plaintiff's "attending psychiatrist for the past 5.5 years." *Id.* He met with Plaintiff on February 17, 2005, to provide a "psychiatric assessment." *Id.* He states that prior to January 4, 2005, Plaintiff was "being compensated by OWCP for the conditions of Panic Anxiety Disorder and PTSD relating to his past employment with [the] United States Postal Service." *Id.* In preparing his opinion, Dr. Blankstein

reviewed his treatment records for Plaintiff from May, 1999, to the present. *Id.* He had also reviewed an OWCP notice of proposed termination, a notice of decision, and a VA rating decision. *Id.*

Dr. Blankstein said that after Plaintiff went to work for the postal service in 1987, "he withstood years of verbal, and on at least one occasion physical abuse at the hands of both supervisors and co-workers." R. 211. The abuse included threats of bodily harm and death. *Id.* When he complained, his supervisors told him he could leave the post office if he did not like it. *Id.* Dr. Blankstein thought that the interrogation by postal inspectors, under threat of termination of employment, and like events "could account for his symptoms suggestive of PTSD." *Id.* Dr. Blankstein said that over the years, he had "found no reason to believe that Mr. Davis is not a reasonably reliable informant." *Id.* He provided statements from co-workers and supervisors who corroborated his history. *Id.* Plaintiff had a panic attack at work on January 24, 1993, and was taken to the hospital. *Id.* He was then treated by Dr. Kaufman until Dr. Kaufman's death in 1995. *Id.* Plaintiff was untreated for 2.5 years, during which time he divorced and moved to Phoenix, Arizona, with his then 8 year old son. *Id.* Dr. Blankstein said he first began to treat Plaintiff in May, 1999. R. 212. Plaintiff moved to Florida with his son and current wife in June, 2004. *Id.*

Dr. Blankstein said that while Plaintiff had improved in his interactions with his immediate family, he still suffered a number of symptoms relating to his 1993 occupational condition. R. 212. He said that this included recurring nightmares of being at that work, tachycardia, excessive sweating, tightness in his chest with pain radiating

into the left arm, headaches, anger, "very little patience," and forgetting to breathe during panic attacks. *Id.* Dr. Blankstein said Plaintiff responded somewhat favorably to Paxil,[3] and the dosage was increased over the years. Dr. Blankstein said that the most troubling symptom was poorly controlled anger and depression that followed outbursts. *Id.* Dr. Blankstein said that Plaintiff had been especially volatile outside the home. *Id.* He had trouble concentrating on simple tasks and was easily frustrated. *Id.* He continued to show panic reaction and evidence of PTSD when subjected to certain levels of stress. *Id.* Dr. Blankstein said: "What may be considered to be normal for the average person is highly magnified for Mr. Davis." *Id.*

Dr. Blankstein said he was then (in 2005) counseling Plaintiff by telephone at least once weekly, and Plaintiff was taking Paxil 25mg twice daily. *Id.* He said that Plaintiff had a number of physical disabilities including loss of vision in his right eye, retro-orbital headaches, osteoarthritis in the knees, and degenerative joint disease at L5-S1. R. 213. During the interview, Plaintiff was coherent and responsive, but became "obviously agitated, angry, and anxious" when he spoke of his experience with the postal service. R. 213. He was somewhat depressed and "drained" at the end of the interview. R. 214. Plaintiff was mistrustful of "the world" except his immediate family. *Id.* Dr. Blankstein found Plaintiff's insight to be fair and his judgment "just fair." *Id.*

---

[3] Paxil relieves a variety of emotional problems. It can be prescribed for serious, continuing depression that interferes with one's ability to function. PDRhealth™, PHYSICIANS DESKTOP REFERENCE.

Case No. 1:08cv203-MP/WCS

Dr. Blankstein had Plaintiff complete the Patient-Rated Anxiety Scale test. R. 214. Dr. Blankstein said that Plaintiff's responses indicted a high level of situational anxiety symptoms, and found the results to be consistent with his clinical presentation. *Id*. His diagnosis was posttraumatic stress disorder, panic disorder without agoraphobia, and depressive disorder, NOS. *Id*. He said Plaintiff's current GAF score was 45, in the severely impaired range, and he thought that the highest GAF score for Plaintiff in the past year was 55. *Id*. Dr. Blankstein concluded:

> Mr. Davis'[s] overall condition is one of a *severely disabled man both physically and from a psychiatric point of view*. Mr. Davis'[s] physical and psychiatric conditions/symptoms render him *incapable of gainful employment. Due to his psychiatric symptoms, I do not believe he would be able to maintain a work pace appropriate to a given workload, perform complex and varied tasks, relate to people beyond giving and receiving instructions, have the ability to influence people, have the ability to make generalizations without immediate supervision, or be able to accept and carry out responsibility for direction, control and planning*.

R. 214-215 (emphasis added). In summary, the ALJ erred in finding that Dr. Blankstein's assessment was supportive of his finding that Plaintiff could do simple unskilled work. The 2005 assessment should have been given accurate substantial weight.

The ALJ rejected Dr. Blankstein's 2008 assessment, finding that "the treatment notes in the record do not support such a serious mental impairment or continuous treatment since 1999." The ALJ's conclusion that Plaintiff had not been continuously treated by Dr. Blankstein since 1999 is rather inconsistent with his conclusion that Dr. Blankstein was a treating physician. Further, the ALJ did not point to the specific treatment notes that he thought did not support Dr. Blankstein's opinion. Dr.

Blankstein's assessment in 2005, like Dr. Clark's assessment in 1998, is detailed and fully describes the evidence relied upon.

Like his 2005 opinion, the January 21, 2008, assessment by Dr. Blankstein is detailed, thorough, and cites the evidence relied upon. R. 342. Dr. Blankstein said he had treated Plaintiff in Tempe, Arizona, from May, 1999, until Plaintiff moved to Florida in June, 2004. *Id.* He said that after Plaintiff moved to Florida, he had "kept in contact with and counseled Mr. Davis via telephone more or less on a monthly basis." *Id.* He also examined Plaintiff in his office in February, 2005. He again examined Plaintiff on January 18, 2008. *Id.* Dr. Blankstein said that Plaintiff continues to suffer from posttraumatic stress disorder, panic disorder without agoraphobia, and depressive disorder. *Id.* He estimated that Plaintiff current and past year GAF score was 50. R. 343. Dr. Blankstein concluded on this occasion:

> In my professional opinion, Mr. Davis'[s] physical and psychiatric conditions prevent him from being able to seek or maintain gainful employment of any kind.
>
> Mr. Davis is being treated with Paxil CR through the Veterans Administration as he is a 100% disabled veteran eligible for treatment. Mr. Davis should continue his counseling and drug treatment.

R. 343.

In summary, the reasons for failing to give substantial weight to the opinion and assessment of Dr. Blankstein, Plaintiff's treating physician, which are fully corroborated by Dr. Clark, are not supported by substantial evidence in the record. "Where the Secretary has ignored *or* failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." *Id.* (emphasis added); Elam v.

Railroad Retirement Bd., 921 F.2d 1210, 1217 (11th Cir. 1991); Critchfield v. Astrue, 2009 WL 635698 (N.D. Fla. Mar 10, 2009) (No. 308cv32-RV/MD). The Commissioner must now accept as true Dr. Blankstein's opinions.

Plaintiff asks that the court reverse the Commissioner's decision and remand for the taking of vocational evidence. Doc. 21, p. 9. That is appropriate here. Plaintiff has non-exertional impairments that "significantly limit basic work skills," and, therefore, vocational testimony is needed. Phillips v. Barnhart, 357 F.3d at 1142.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge did not correctly follow the law and were not based upon substantial evidence in the record. The decision of the Commissioner to deny Plaintiff's application for benefits should be reversed and remanded. The Commissioner must now accept the assessments of Dr. Blankstein as true and redetermine Plaintiff's residual functional capacity and non-exertional limitations following Dr. Blankstein's assessment. Then the Commissioner must obtain vocational evidence, if needed, to determine whether there are any jobs in the national economy that Plaintiff can do, given his residual functional capacity and non-exertional limitations.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **REVERSED** and **REMANDED** for the purposes set forth above.

**IN CHAMBERS** at Tallahassee, Florida, on September 24, 2009.

                              s/ William C. Sherrill, Jr.
                              **WILLIAM C. SHERRILL, JR.**
                              **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**